JODI LINKER
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:  Sophia_Whiting@fd.org

Counsel for Defendant Alvarenga, a.k.a. Lopez

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OSMAR REYES ALVARENGA, A.K.A. CESAR LOPEZ<br><br>Defendant. | **Case No.:** CR 19–482 CRB<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

## INTRODUCTION

Osmar Reyes Alvarenga, a.k.a. Cesar Lopez, accepted responsibility for his involvement in low-level drug dealing by entering a plea agreement with the government. Mr. Alvarenga has been in custody in this case for a total of seven months. He expects to be deported to Honduras once his sentence is complete, where his wife and two young children will join him. Mr. Alvarenga's advisory Guideline range, including an upward adjustment for obstruction of justice due to absconding, is 10 to 16 months. A sentence of time served (seven months) is sufficient in light of Mr. Alvarenga's conduct over nearly three years since he fled, his background, the nature of the offense, the sentence he would have received had he not fled, and his inevitable deportation to Honduras.

## BACKGROUND

Osmar Reyes Alvarenga was born in Honduras, where he lived under very modest circumstances. He first came to the United States to find work when he was just 17 years old. He spent most of his adult life in the U.S. working in construction. In nearly three decades since he first came to the U.S., Mr. Alvaregna has only one prior conviction, a DUI in 2003. *See* Presentence Investigation Report (PSR) ¶ 8-12. His criminal history is limited because he spent the vast majority of his life working hard in legitimate jobs. In 2019, he was supporting his wife and young daughter, but could not find a stable job. He would stand on the corner at Home Depot waiting for day labor work but, even when he was chosen, he was often not paid after the work was done. In his desperation, he made the terrible and uncharacteristic decision to get involved with street-level drug dealing to make ends meet.

Unlike many defendants charged with drug crimes, this is Mr. Alvarenga's sole drug arrest. *See* PSR ¶ 8-13. He was indicted federally because he was arrested during the federal government's Federal Initiative for the Tenderloin (FIT). After more than two months in federal custody in 2019, he was released to the halfway house on lockdown (this lockdown period is not included in his custodial credits of seven months). PSR ¶ 4. On January 8, 2020, he unfortunately made the decision to leave the halfway house, reunite with his family, and abscond from his case. *See* PSR ¶ 5.

While fleeing from his case is inexcusable, it is important to note than for the nearly three years before he was re-arrested, Mr. Alvarenga worked hard and committed no new crimes. *See* PSR ¶ 8-13. He and his family moved to Georgia, where he was hired by a flooring company (Woodwudy/Expressive Flooring). His wife provided his pay statements dating from September 4, 2020 up to his arrest in July 2022. Whiting Declaration in Support of Defendant's Sentencing Memorandum (Whiting Decl.), Ex. C. He was arrested in Georgia on the arrest warrant in this case on July 22, 2022, without having committed any new criminal conduct. *See* PSR ¶ 6.

Mr. Alvarenga expects to be deported to Honduras upon finishing his sentence and plans to stay there. *See* Whiting Decl., Ex. A, B. His wife, who is also Honduran, and their children will join him in Honduras. *See* Whiting Decl., Ex. B. He plans to use the construction skills he has learned over years of working in the U.S. to provide for his family in Honduras. Whiting Decl., Ex. A.

**DISCUSSION**

**I.   The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))**

The government and Mr. Alvarenga agree that the Adjusted Offense Level is 12. He has zero criminal history points. He received a two-point upward enhancement for absconding from the halfway house. His advisory Guideline range including the obstruction of justice enhancement is therefore 10 to 16 months. Without this adjustment, Mr. Alvarez's Guidelines range would be 6 to 12 months and he would have already served a guidelines sentence, which is appropriate given that he did abscond.

Although the Court must remain mindful of the Sentencing Guidelines recommendation, the advisory Guideline range is not presumptively reasonable and it cannot be given any more or less weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Carty*, 520 F.3d at 991. A sentence of time served, seven months, best aligns with the goals and factors of section 3553(a) for the following reasons.

**II.  The Nature and Circumstances of the Offense and Mr. Alvarenga's History Warrant a Downward Departure (18 U.S.C. § 3553(a)(1))**

As detailed in the Background section above, the circumstances surrounding the offense and the characteristics of Mr. Alvarenga's background counsel a downward variance from the advisory range. *See* 18 U.S.C. § 3553(a)(1). He came to this country alone while he was still a minor. He has worked hard in legitimate jobs, but his limited education, lack of community support, and undocumented immigration status have made it difficult to maintain stable employment. Despite these difficult circumstances, he managed to find gainful employment for decades. This is why his criminal history consists of just one DUI from two decades ago, despite first coming to the United States 25 years ago. However, at the time of the offense, he was struggling as a day laborer and was having trouble making ends meet for his family. He had worked difficult jobs only to be stiffed at the end, with no legal recourse available. He relates these circumstances not to minimize his conduct, but

to provide context for it. He has already shown for the past three years that he will not reoffend.

The nature and circumstances of Mr. Alvarenga's absconding also merits a small downward departure from the guidelines range, *since the guidelines range already takes obstruction of justice into account*. If the two-point enhancement had not been applied, then a guidelines sentence between 6 to 12 months would be appropriate to reflect Mr. Alvarenga's flight. Mr. Alvarenga has already served such a guidelines sentence. But since the 10 to 16 month range includes an enhancement for obstruction, his conduct should be compared to other defendants who have absconded or otherwise obstructed justice. Unlike many defendants, Mr. Alvaregna did not commit any new criminal conduct. To the contrary, he reunited with his family and worked full time installing floors in the years since he left the halfway house.

### III. A Downward Departure is Appropriate to Reflect the Severity of the Offense (18 U.S.C. § 3553(a)(2)(A))

Furthermore, a downward departure is warranted because this is a less serious offense compared with other federal crimes. *See* 18 U.S.C. § 3553(a)(2)(A). While Mr. Alvarenga takes responsibility for his criminal conduct in the instant offense and recognizes that selling any amount of drugs negatively impacts public health, the scope of his offense should be viewed in relation to other federal cases. The fact is that street-level drug sales are a minor offense compared to the vast majority of federal prosecutions, including drug prosecutions. If not for the FIT initiative, this offense would not be prosecuted in federal court. To the contrary, federal drug cases normally present more serious facts, such as substantially larger quantities of controlled substances, weapons, or an organized drug trafficking operation. In comparison, the offense in Mr. Alvarenga's case is relatively minor.

### IV. A Sentence Greater than Seven Months Would Cause Unwarranted Sentence Disparities

At the time Mr. Alvarenga was charged there were dozens of analogous FIT cases in this district. These cases largely received time served sentences of one to four months,[1] especially for first time offenders. A sentence longer than seven months would be disparate given the conduct at issue.

---

[1] This assertion is based on a survey of the FIT cases represented by the Federal Public Defender's Office in 2019-2020. Of 73 reported cases, 43 received a sentence of less than five months. Fifty received a credit for time served sentence or no custodial sentence. The majority of the 72 cases had higher criminal history categories and/or higher offense levels than those at issue in this case.

DEFENDANT'S SENTENCING MEMORANDUM
*ALVARENGA, A.K.A. LOPEZ*

*United States v. Garcia*, 20-cr-00309-CRB, is especially instructive because it also involved a FIT defendant who absconded pretrial supervision. Mr. Garcia, a.k.a. Sergio Martinez Cuevas, cut off his ankle monitor and was re-arrested months later, again for drug dealing in the Tenderloin. At the time of the sentencing, Mr. Garcia had been arrested four times within one year for dealing drugs in the Tenderloin. His federal offense involved methamphetamine and fentanyl. This Court gave Mr. Garcia a sentence of six months for his conduct. To sentence Mr. Alvarenga, who has a single drug arrest and never re-offended after absconding, to more than seven months would be disparate.

**V. A Sentence of Seven Months Affords Adequate Deterrence and Mr. Alvarenga's Inevitable Deportation Minimizes Public Safety Concerns (18 U.S.C. §§ 3553(a)(2)(B) and (C))**

Mr. Alvarenga respectfully contends that a below-guidelines sentence, given his low risk of recidivism and inevitable deportation, provides sufficient deterrence and public protection. Mr. Alvarenga's history shows this behavior was aberrant. Furthermore, he will be deported and knows he would face steep penalties if he were to return, including supervised release violations, illegal re-entry charges, and federal charges for any new offense conduct.

**CONCLUSION**

For the aforementioned reasons, Mr. Alvarenga respectfully requests the Court sentence him to time served (seven months custody) and three years of supervised released.

Dated: December 1, 2021                Respectfully submitted,

                                       JODI LINKER
                                       Federal Public Defender
                                       Northern District of California

                                            /S
                                       SOPHIA WHITING
                                       Assistant Federal Public Defender